IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>G.S. SMITH, a/k/a<br>GORDON SLOAN SMITH,<br><br>    Debtor.<br>_____<br><br>PETER NORTMAN, et al.,<br><br>    PLAINTIFFS,<br><br>vs.<br><br>GORDON SLOAN SMITH,<br><br>    DEFENDANT.<br>_____ | Chapter 7<br><br>Case Nos. 2-06-bk-00006-EWH<br>                2-06-bk-00007-EWH<br><br>(Jointly Administered)<br><br><br><br>Adversary No. 2:06-ap-00373-EWH<br><br><br><br>**MEMORANDUM DECISION** |

## I. INTRODUCTION

Plaintiffs obtained a default judgment based on a fraud claim against the Debtor in prepetition litigation. Plaintiffs filed an adversary complaint in Debtor's bankruptcy case, alleging that the debt owed to them is nondischargeable under 11 U.S.C. § 523(a)(2)(A) as a debt for money obtained by fraud, and § 523(a)(19) as a debt for violation of federal and state securities law. Plaintiffs have moved for summary judgment, asserting that the default judgment requires an entry of judgment of nondischargeability as a matter of law under principles of issue preclusion. Because the Debtor participated in the prior litigation and was afforded a full and fair opportunity

to defend himself on the merits, but chose not to, the prior judgment is entitled to be given preclusive effect in this proceeding.

## II. FACTS AND PROCEDURAL BACKGROUND

On March 9, 1995, Plaintiffs sued the Debtor, his wife and several related entities in the United States District Court for the District of Oregon ("Oregon Litigation"). The Oregon Litigation arose out of creditor claims that the Debtor had purchased in a bankruptcy filed by Wallace and Clarice Hall ("the Halls") and their businesses in Seattle, Washington. The Plaintiffs alleged they delivered $325,000 to the Debtor to purchase the claims as part of a "work-out" of the Halls' bankruptcy and that the Debtor received a dividend on the purchased claims, which he improperly kept. The Plaintiffs' allegations in the Oregon Litigation included common law fraud and violations of federal and state securities law. A brief summary of some of the proceedings in the Oregon Litigation follows.

In response to the first amended complaint, the Debtor, represented by counsel, filed a motion to dismiss and to strike allegations. The matter was heard by a Magistrate Judge whose Findings and Recommendation held that the Debtor's motion to dismiss should be granted in part and denied in part. Plaintiffs filed a second amended complaint, which mooted Debtor's motion to strike allegations of the first amended complaint. The Debtor filed an answer on June 27, 1995.

By stipulated order, Debtor was permitted to filed a third-party complaint for indemnity against the Halls on September 20, 1995. The Magistrate Judge also granted the Debtor's motion to extend discovery and file dispositive motions. In December 1995, the Magistrate Judge granted defense counsel's motion to withdraw

2

as counsel for the Debtor and the other defendants. The Plaintiffs were granted leave to file a third amended complaint. Through new counsel, the Debtor filed an answer in March 1996.

In July 1996, Mortgage Lenders of America's ("Intervenor") motion to intervene was granted. Intervenor filed a complaint against the Debtor and others, alleging breach of contract concerning loans it had made to the Debtor in connection with the Halls' bankruptcy. In September 1996, the Magistrate Judge ordered the parties to mediation; it was unsuccessful. Also in September, Debtor's new defense counsel's motion to withdraw as counsel for all defendants was granted. Debtor was ordered to obtain new counsel by October 4, 1996. The Debtor did not.

During the course of the litigation, Plaintiffs filed several motions to compel against the Debtor to obtain discovery. The Debtor was also deposed.

In July 1997, the Magistrate Judge sent the case back to the District Court. On November 20, 1997, the District Court ordered status reports from all parties by December 19, 1997. The Plaintiffs and Intervenor filed their reports. On December 18 or 19, 1997, the Debtor faxed a letter to chambers, advising the District Court that he was living in Arizona and had been unable to find counsel. The Debtor further stated that "the primary issue in dispute in this case is whether or not the Nortmons [sic] are entitled to any of the money being held by the Bankruptcy Court" and that he had "tried to discuss this with Norton's [sic] attorney without success." He stated that he would leave the proposed briefing and hearing schedule to Plaintiffs' attorneys and suggested that the District Court "schedule a status conference and perhaps direct the parties to go to mediation."

3

In February 1998, the District Court entered default against the corporate defendant entities because they were required to appear through counsel. On May 28, 1998, the District Court issued its pretrial order, setting various deadlines and the pretrial conference for November 16, 1998. In the 11-month period between the Debtor's letter to chambers and the pretrial conference, the Debtor did not communicate with the District Court or comply with court-ordered deadlines. The Debtor did not appear at the pretrial conference.

At that conference, the District Court granted Plaintiffs' motion for default against the Debtor. On December 2, 1998, the District Court granted the Intervenor's motion for default judgment against the Debtor. On January 4, 1999, the Debtor, through counsel, filed an answer to the Intervenor's complaint; a motion to set aside the default and default judgment and supporting memorandum; and a declaration by the Debtor in support of his motion. The Debtor's declaration was unsigned.

On January 11, 1999, the District Court ruled on the Debtor's motion, noting that the grounds for this default "consist of defendant's dilatory tactics and lengthy inactivity in this matter." The Order further stated that "[t]he unsigned Declaration from Smith filed with the motion to set aside provides no substantive explanation or justification for Smith's refusal to cooperate or even communicate with this court for over one year, and fails to provide any good cause for setting aside the Default." However, to ensure strict compliance with the notice requirements of Fed. R. Civ. P. 55, the District Court vacated the default judgment in favor of the Intervenor and denied Plaintiffs' motion for entry of final judgment. The District Court granted the parties leave to move for default judgment by January 29, 1999, and directed defense counsel to file objections or any

4

other responsive pleading by February 12, 1999. Defense counsel was also directed to assert any grounds for conducting a hearing on the applications.

The Plaintiffs and Intervenor moved for default judgments and the Debtor filed his objections and also moved to amend his answers. On April 29, 1999, the District Court granted the applications for default judgments. The District Court granted the Plaintiffs final judgment on seven of their eleven claims for relief, including the claims for violations of securities law (2nd through 5th claim) and for common law fraud (6th claim). The District Court dismissed with prejudice the other claims for relief. An amended opinion and order was issued on May 25, 1999, which did not alter these judgments. The Debtor did not appeal.

On May 17, 2004, Debtor filed his Chapter 7 petition. The Plaintiffs timely filed their proof of claim as a judgment creditor in the amount of $1,037,638.50. They filed a complaint to determine dischargeability for which they seek an order of summary judgment.

### III. ISSUE

Is the default judgment based upon fraud entitled to preclusive effect in the bankruptcy proceeding so as to prevent discharge of the judgment debt?

### IV. JURISDICTIONAL STATEMENT

Jurisdiction is proper under 28 U.S.C. § 1334. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I). Venue is proper under 28 U.S.C. §1409.

5

## V. DISCUSSION

Summary judgment should be granted when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056. It is well established that the principles of collateral estoppel apply in dischargeability proceedings pursuant to § 523(a). Grogan v. Garner, 498 U.S. 279, 284-85 n.11 (1991). Collateral estoppel is appropriate when the following elements are met:

> (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.

In re Palmer, 207 F3d 566, 568 (9th Cir. 2000) (citations omitted).[1] Although the parties' papers rely on different sets of facts, their oral arguments presented no material facts in dispute, and the Court finds there is no genuine issue as to any material fact. Moreover, the parties agreed that for purposes of the summary judgment motion, the critical question is whether the issue of fraud was "actually litigated" in the Oregon Litigation.[2]

The cases addressing whether an issue was actually litigated are on a continuum; they generally turn on the degree of participation by the debtor in the prior litigation. For example, at one end of the spectrum is In re Silva, 190 B.R. 889 (9th Cir. B.A.P. 1995), in

---

[1] The Debtor argues that federal collateral estoppel law is the appropriate standard for determining whether the claims resolved in the Oregon Litigation are precluded here and that, in any event, there is little practical difference between Oregon and federal law -- both require that the issue have been actually litigated in the prior dispute. Debtor's Response to Motion for Summary Judgment at 7-8. The Court agrees.

[2] Because the Court finds that the issue of common law fraud was actually litigated in the prior litigation, it need not reach the question of the whether the state and federal securities violations fall squarely within § 523(a)(19).

6

which there was almost no participation by the debtor in the prior proceeding. The debtor was an employee of a company that had engaged in fraud; he had played a minor role in the scheme. Silva filed a pro se denial of the complaint and did nothing more. Id. at 891. The court's fifteen-page decision finding fraud mentioned Silva once. The court found that because the debtor's fraudulent conduct was not actually litigated in the prior case, the judgment was not entitled to collateral estoppel effect on the issue of dischargeability in his bankruptcy. Id. at 894.

An example at the other end of the spectrum is Muegler v. Bening, 413 F.3d 980 (9th Cir. 2005), in which the debtor actually participated in a trial that resulted in a jury verdict of fraud. The Debtor argued, inter alia, that the issue was not actually litigated in the prior preceding because the discovery and trial sanctions placed on him prevented the judgment from being a final judgment on the merits. The court disagreed and held that the debtor was collaterally estopped from relitigating the issue of fraud in the bankruptcy court. Id. at 986.

The parties agree that the instant case falls somewhere along the spectrum of cases, but they do not agree where. Plaintiffs cite In re Gottheiner, 703 F.2d 1136, (9th Cir. 1983), among others, to support its position that the "actually litigated" prong has been satisfied here. In Gottenheiner, the government sued the debtor and his company to collect a debt based upon payments for medicare services. Gotteheiner actively participated in the litigation for sixteen months. When the government moved for summary judgment and his counsel was not permitted to withdraw from the case, the motion was unopposed and granted. Id. at 1138. Subsequently, in his bankruptcy case, the debtor challenged the use of collateral estoppel to declare the debt nondischargeable, arguing that the issue had not been actually litigated. The Ninth Circuit affirmed the bankruptcy court, noting that the

7

Debtor had not simply given up "from the outset" in the prior litigation and the fact that he "decided his case was no longer worth the effort does not alter the fact that he had his day in court." Id. at 1140.

The Debtor, on the other hand, argues that his case is much closer to the facts in Silva than to Gottheiner and other cases at the more active end of the continuum. Debtor believes his case is "very similar" to Silva because he "answered, and then stopped participating"; he did not "initiate discovery"; and he was handicapped by the lack of resources to defend himself. Debtor's Response to Motion for Summary Judgment at 10.

The Debtor also argues that Gottheiner is distinguishable because the district court there reviewed the record on its own to conclude there were no genuine issues of material fact.[3] The district court noted its independent review, but the affirmation by the court of appeals did not turn on that fact. In holding that collateral estoppel was proper, the Ninth Circuit made the point that the circumstances were "quite different" from a party that simply fails to put up a fight because the debtor actively litigated for sixteen months before he decided to give up. 703 F.2d at 1140.

The Debtor also relies on a footnote in In re Bush, 62 F.3d 1319, 1325 n.8 (11th Cir. 1995), for the proposition that the Court should consider that "the amount of money at stake or the inconvenience of the forum might disincline a defendant to offer a defense." The Debtor suggests those factors weigh in his favor because he would have had the expense and inconvenience of traveling to Oregon (after moving to Arizona) and the face value of

---

[3] Plaintiffs argue that the Oregon Litigation was like Gottheiner because the district court reviewed their submissions independently and did not accept all of their claims for relief.

8

the lawsuit was in the range of $325,000. Given that the Debtor, through counsel, participated in the Oregon Litigation for at least a year and even sued a third-party for indemnification, it is doubtful whether these factors apply here or, if they do, whether they actually argue in Debtor's favor.

Putting that question aside, however, Debtor's argument overlooks the principal holding of that case, which upheld the preclusive effect of a default judgment based on fraud. In <u>Bush</u>, a court entered a pretrial order of default judgment for fraud against the debtor as a sanction for failing to cooperate in discovery and failing to appear at a pretrial conference. 62 F.3d at 1321-22. In the debtor's subsequent Chapter 7 case, the bankruptcy court granted the judgment creditor's motion for summary judgment in its nondischargeability proceeding on the basis of collateral estoppel. The only issue on appeal was "whether, in a bankruptcy discharge exception proceeding, a default judgment based upon allegations of fraud may be used to establish conclusively the elements of fraud and prevent discharge of the judgment debt." <u>Id</u>. at 1322.

The Eleventh Circuit was persuaded by the reasoning of bankruptcy courts giving preclusive effect in a dischargeability proceeding to a prior default judgment because the debtor did not deserve "a second bite at the apple."

> Debtor/defendant was given the full opportunity to defend himself in the [prior] action and he chose not to do so. Debtor/defendant could have reasonably foreseen the consequences of not defending an action based in part on fraud. *It would be undeserved to give debtor/defendant a second bite at the apple when he knowingly chose not to defend himself in the first instance.*

Id. at 1324 (emphasis in original; citation omitted). Because the debtor in <u>Bush</u> had participated in the prior action over an extended period of time and, subsequently, engaged

9

in conduct that resulted in the sanction of a default judgment, the court of appeals was reluctant to give him a second chance. Id.

The court of appeals also relied heavily on In re Daily, 47 F.3d 365 (9th Cir. 1995), in which the Ninth Circuit affirmed the use of a default judgment entered as a sanction to estop the debtor from denying fraud in bankruptcy court. The Bush court found the facts in Daily "very similar" to its case.

> Like Daily, Bush did not simply give up at the outset. He actively participated in the adversary process for almost a year. He was represented by counsel. He answered the complaint. He filed a counterclaim. He filed discovery requests. After undertaking to represent himself, he began to refuse to cooperate in discovery. He refused to produce documents despite repeated requests. He refused to appear at his properly noticed deposition. He *did* respond to [plaintiff's] Motion for Sanctions claiming he was out of state on the scheduled day. At the district court's properly noticed pre-trial conference, Bush failed to appear. As in *Daily,* the default judgment for fraud against Bush was entered pursuant to Rule 37 as a sanction for deliberate refusal to participate in discovery.

62 F.3d at 1325-26. Finding that Bush had participated in the prior action and had been given a full and fair opportunity to defend on the merits, but chose not to, the Eleventh Circuit affirmed: "Just as due process is not offended by the entry of a default judgment against a party for failure to cooperate with discovery, . . . neither is due process offended if a debtor is held to the consequences of that judgment in a subsequent bankruptcy discharge proceeding." Id. at 1325 (citations omitted).

The facts of the instant case are far more similar to Bush and Daily than they are to Silva. The Debtor here did not simply give up at the outset. He actively participated in the Oregon Litigation for at least a year. He was represented by three different attorneys. He filed responsive pleadings to complaints and filed a third-party complaint for indemnity. He

engaged in mediation. He was deposed. Eventually, he chose not to participate and failed to comply with court-ordered deadlines. He did not appear at the pretrial conference. As in Bush and Daily, the default judgment for fraud was entered as a sanction. The Debtor did respond, through counsel, to the entry of default and default judgment. At bottom, the Debtor was given a full and fair opportunity to litigate the allegations on the merits and he chose not to. "In such a case the 'actual litigation' requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so." Daily, 47 F.3d at 369.

## VI. CONCLUSION

This was not an "ordinary" default. See id. at 368. Unlike Silva, the Debtor did not simply file a general denial and nothing more. Like Gottheiner, Bush and Daily, the Debtor participated in the prior litigation over an extended period of time -- in the Debtor's case, both as a defendant and third-party plaintiff. At some point, the Debtor decided the Oregon Litigation was no longer worth the effort, but that does not alter the fact that he was afforded a full and fair opportunity to contest the issues on the merits. Gottenheiner, 703 F.2d at 1140; Bush, 62 F.3d at 1325; Daily, 47 F.3d at 368. Under such circumstances, the "actual litigation" requirement is satisfied. Daily, 47 F.3d at 368. Accordingly, the Plaintiffs' default judgment is entitled to be given preclusive effect in this adversary proceeding. Plaintiffs' motion is granted and their debt is deemed nondischargeable under 11 U.S.C. § 523(a)(2)(A) as a debt for money obtained by fraud.

11

The foregoing constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052. Counsel for the Plaintiffs is directed to lodge an appropriate form of judgment.

Dated this 30th day of March, 2007.

/s/ Eileen W. Hollowell
EILEEN W. HOLLOWELL
UNITED STATES BANKRUPTCY JUDGE

Copies of the foregoing mailed this
30th day of March, 2007, to:

Carlos M. Arboleda
Arboleda Brechner
4545 East Shea Blvd. #120
Phoenix, AZ 85028

Frederic Ernest Cann
1300 SW Fifth Ave. #2750
Portland, OR 97201-5617

Alan A. Meda
Stinson Morrison Hecker LLP
1850 North Central Ave. #2100
Phoenix, AZ 85004

Maureen Gaughan, Trustee
P.O. Box 6729
Chandler, AZ 85246-6729

Christopher J. Pattock
Office of the U.S. Trustee
230 North First Ave. #204
Phoenix, AZ 85003-1706

By /s/
    Judicial Assistant